IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.

VERNEL RUFF,

                Defendant.

CRIMINAL ACTION
NO. 18-561-2

## OPINION

**Slomsky, J.**                                                                                                          **May 26, 2020**

## I.   INTRODUCTION

Defendant Vernel Ruff pled guilty to possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count I), and aiding and abetting the distribution of cocaine base ("crack"), in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2 (Count IV).  He is currently detained, awaiting sentencing, at the Federal Detention Center in Philadelphia.  He has been in federal custody since December 12, 2018, a period of over eighteen months.  Presently before the Court is Defendant's Motion for Release Pending Imposition of Sentence (Doc. No. 110).  For reasons that follow, the Motion will be granted.

## II.   BACKGROUND

On December 6, 2018, a grand jury returned an Indictment (Doc. No. 1) charging Defendant with possession of a firearm by a convicted felon[1] and aiding and abetting the distribution of cocaine base ("crack").  (Id.)  A Superseding Indictment was subsequently filed

---

[1]   Defendant's underlying conviction was for forgery of a Pennsylvania identification card. (Doc. No. 110 at 17; PSR at 11.)

(Doc. No. 67) charging him with the same offenses.[2]   Notably, according to the Presentence Investigation Report ("PSR"), there is no evidence that Defendant ever possessed the firearm in connection with the drug activity. (PSR at 9.)  The PSR also states that Defendant sold 26.8 grams of crack, which is less than one ounce.  (Id. at 8.)

On December 20, 2018, Defendant appeared before United States Magistrate Judge Jacob P. Hart for a hearing on the Government's motion for pretrial detention.  (Doc. No. 19.)   At the hearing, Defendant stipulated to detention and Judge Hart ordered him detained without bail prior to trial pursuant to 18 U.S.C. § 3142(e).  (Doc. No. 19.)

On August 2, 2019, Defendant pled guilty to the two offenses.  (Doc. No. 48.)  Sentencing is scheduled for July 21, 2020.  According to the PSR, Defendant's guideline range is 41 to 51 months' imprisonment (PSR at 21), although Defendant has indicated through his counsel that he plans to challenge the calculation of the guideline range.

On April 14, 2020, Defendant filed the instant Motion for Release Pending Imposition of Sentence (Doc. No. 110.)  Defendant submits that he is a good candidate to be placed on home confinement prior to the imposition of sentence because he poses no risk of flight or danger to the community.  (Id. at 16.)  He stresses that he does not pose either one because he is a lifelong Philadelphia resident, with strong ties to the community, and a strong support system around him. Defendant is 39 years old and has a good co-parenting relationship with the mother of his two children and maintains a good relationship with them.  He also has a close relationship with his

---

[2]   According to the Government, the Superseding Indictment was necessary to comply with the United States Supreme Court's recent opinion in Rehaif v. United States, 139 S. Ct. 2191 (2019), which held that to support a charge under 18 U.S.C. § 922(g) the government must prove that the defendant knew the facts making his possession of a firearm or ammunition unlawful.  Accordingly, Count I of the Superseding Indictment added an averment that Defendant knew he had previously been convicted of a felony.  (See Doc. No. 67 at 1.)

mother, Loraine Brown.  According to the PSR, she visits him weekly at the Philadelphia FDC. (PSR at 15.)  If released, he will reside with her at her house located at 1457 North 60th Street in Philadelphia, Pennsylvania, and agrees to home confinement as a condition of bail.  (Doc. No. 110 at 5.)  He notes that he has no prior history of violence and two prior convictions, each occurring more than five years ago: a misdemeanor drug possession conviction in 2009 and the forgery conviction in 2014.  (Id. at 4.)

In addition, Defendant submits that home confinement is appropriate because he has chronic asthma.  He avers that his asthmatic condition makes him "acutely vulnerable … to permanent injury or even death should he contract [COVID-19]," and that the conditions at the Philadelphia FDC prevent him from practicing social distancing.  (Id. at 1, 17.)  To evidence his condition, Defendant provides medical records from the Philadelphia FDC detailing an extensive history of respiratory disease.  (Doc. No. 114.)  His records show that he has suffered respiratory problems since childhood, with respiratory issues presenting by age eight.  (Id. at 18.)  The records also show that he has used an albuterol inhaler to manage his asthma.  (Id. at 10.)  At the Philadelphia FDC, he undergoes "advanced practice provider follow-up encounter[s]" for "chronic care." (Id. at 9.)  In fact, on December 21, 2018, the day after Judge Hart ordered Defendant detained, he was prescribed an albuterol inhaler by a practitioner at the Philadelphia FDC's health services center.  (Id. at 46.)  His prescription inhaler has been regularly refilled during his incarceration at the Philadelphia FDC.  (Id.)

Defendant is undoubtedly concerned about his health.  He represents that he will most certainly comply with home detention as a condition of bail because he does not want to risk leaving home and exposing himself to the COVID-19 virus given his asthmatic condition.  (Doc. No. 110 at 16.)  This condition may exacerbate an adverse health reaction from the virus.  (Id. at

11-15.)  He realizes his vulnerability and the need to leave home only under conditions ordered by the Court, such as for medical care.  (Id.)

On April 17, 2020, the Government responded to the Motion for bail.  (Doc. No. 111.)  In the Response, the Government concedes that Defendant suffers from chronic asthma but contends that his "situation is presented by numerous offenders who are incarcerated as a result of their criminal conduct."  (Id. at 2-3.)  The Government also discusses the number of mitigation measures undertaken by the Bureau of Prisons ("BOP") to minimize the risk to defendants within the Philadelphia FDC.  These measures include (1) screening of all inmates and staff for COVID-19 symptoms; (2) restricting access to BOP facilities to only those performing essential services; (3) establishing quarantine areas within BOP facilities for infected detainees; (4) suspending social visits to BOP facilities; (5) suspending non-essential legal visits; (6) cancelling inmate and staff travel among BOP facilities; and (7) modifying BOP operations to maximize social distancing.[3] (Id. at 4-7.)

On May 6, 2020, at a video hearing held before the Court, Defendant was present and counsel for both parties presented arguments in support of their respective positions on Defendant's Motion for Release.  (Doc. No. 121.)  Counsel for Defendant argued that Defendant does not pose a danger to the community or a flight risk, and that due to Defendant's medical vulnerability in the COVID-19 environment, he should be granted release pending sentencing.

---

[3]  In a letter dated May 19, 2020, Alisha Gallagher, an attorney employed by the Federal Bureau of Prisons, confirmed that these measures will remain in effect until June 30, 2020.  In addition, Gallagher reported that, to date, three staff members at the Philadelphia FDC have tested positive for coronavirus and recovered, and no inmates have shown signs of the virus, although the extent of testing is unclear.  Gallagher also reported that on May 18, 2020, the Philadelphia FDC began testing all newly detained persons for COVID-19 prior to release to general population.  The testing procedure requires 14 days in quarantine, followed by testing using a nasal swab, which is sent to a laboratory for processing.  A detainee remains quarantined until the test result is received.

While counsel acknowledged that Defendant faces a presumption that he should be detained, he stressed that Defendant has never failed to appear for trial and that Defendant would not pose a danger to the community for the reasons set forth above.  To assure the Court of compliance, Defense Counsel suggested that Defendant be subject to house arrest with global positioning system ("GPS") tracking.  As noted, Defendant would reside with his mother, Loraine Brown, at her house at 1457 N. 60th Street, Philadelphia, Pennsylvania 19151.  During the hearing, Defendant testified and confirmed that, if released, only he and his mother would reside in her house.  He also proffered that he has continued his education while detained at the FDC and, if released, he plans to continue to do so.

The Government countered that the Motion should be denied because, given Defendant's criminal history and the charges that he faces, there is a statutory presumption that Defendant presents a danger to the community and poses a flight risk.  The Government contended that because Defendant is now closer to sentencing, i.e. the punishment stage, his risk of flight is increased.  It noted that Defendant's guideline range is not de minimus.  The range is 41 to 51 months.  The Government also argued that Defendant's risk of contracting COVID-19 is not necessarily lessened by his release to his mother's house because Philadelphia County is the most COVID-19 infected county in the Commonwealth and that in the 19151 Zip Code, where Defendant's mother resides, the rate of infection among all tested persons is 34.7%.

## III.    DISCUSSION

In his Motion, Defendant asserts that he should be released pursuant to 18 U.S.C. § 3143(a) and 18 U.S.C. § 3145(c).  While 18 U.S.C. § 3143(a) does not afford him release pending sentencing, 18 U.S.C. § 3145(c) does so because that Section permits a court to release a defendant pending sentencing if he does not pose a risk of flight or danger to the community, and there is an exceptional reason for release.  The Court will address each Section in turn.

5

**A.   18 U.S.C. § 3143(a)**

First, Defendant claims that he should be released pursuant to 18 U.S.C. § 3143(a).

Defendant acknowledges that given his crimes of conviction in this case, the provisions of 18

U.S.C. § 3143(a)(2) would apply here.  That Section provides:

> (a) (2) The judicial officer shall order that a person who has been found guilty of
> an offense in a case described in subparagraph (A), (B), or (C) of subsection
> (f)(1) of [18 U.S.C. § 3142][4] and is awaiting imposition or execution of
> sentence be detained unless—
>
> (A)
> > (i) the judicial officer finds there is a substantial likelihood that a
> > motion for acquittal or new trial will be granted; or
> >
> > (ii) an attorney for the Government has recommended that no sentence
> > of imprisonment be imposed on the person; <u>and</u>
>
> (B) the judicial officer finds by clear and convincing evidence that the
> person is not likely to flee or pose a danger to any other person or the
> community.

18 U.S.C. § 3143(a)(2) (emphasis added).

In this case, Defendant has not shown that he can satisfy subsection (A)(i) or (A)(ii)

because he has pled guilty and the Government has not recommended that no sentence of

imprisonment be imposed.   For this reason, Defendant is automatically not subject to release under

18 U.S.C. § 3143(a)(2).

**B.   18 U.S.C. § 3145(c)**

Second, Defendant argues that he should be released pursuant to 18 U.S.C. § 3145(c).

Section 3145(c) states in relevant part:

> [a] person subject to detention pursuant to section 3143(a)(2) … and
> [whom a judicial officer finds by clear and convincing evidence that

---

[4]   As noted above, Defendant pled guilty to distributing a substance containing a detectable
amount of cocaine base ("crack"), in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), which is
one of the offenses listed in 18 U.S.C. § 3142(f)(1)(C).

> the person is not likely to flee or pose a danger to the safety of any other person or the community if released] …, may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.

18 U.S.C. § 3145(c).  In other words, the court may release a person who is otherwise mandatorily detained under § 3143(a)(2) if two conditions are satisfied.  First, the court must "find[] by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community."  18 U.S.C. §§ 3143(a)(1), 3145(c).  Second, the court must find that "exceptional reasons" justify release.  18 U.S.C. § 3145(c).  Section 3145(c) does not define "exceptional reason," nor has the Third Circuit Court of Appeals provided guidance on the definition of the term.[5]  The Court, however, is "guided by the decisions of other courts that have defined 'exceptional' as something out of the ordinary that distinguishes the defendant's situation from that of other defendants subject to mandatory presentence detention."  United States v. Ortiz, No. 18-134, 2020 U.S. Dist. LEXIS 67651, at *14-15 (M.D.Pa. Apr. 17, 2020) (internal citations omitted).  "The test is a flexible one, vesting the court with discretion to determine whether a particular set of circumstances are 'exceptional' based on a fact-intensive inquiry."  Id.

In the instant case, both of Section 3145(c)'s conditions have been met.  Defendant has shown by clear and convincing evidence that he does not pose a risk of flight or danger to the

---

[5]  While the Third Circuit Court of Appeals has not defined "exceptional reasons," it has made clear that the mere existence of COVID-19 and the possibility that it may spread to a particular prison does not justify release.  See United States v. Raia, No. 20-1033, 954 F.3d 594, 597 (3d Cir. Apr. 2, 2020) ("We do not mean to minimize the risks that COVID-19 poses in the … prison system, particularly for inmates … But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify … release."); United States v. Roeder, No. 20-1682, 2020 U.S. App. LEXIS 10246, at *7 (3d Cir. Apr. 1, 2020) ("[T]he existence of a widespread health risk is not, without more, a sufficient reason for every individual subject to a properly imposed federal sentence of imprisonment to avoid or substantially delay reporting for that sentence[.]").

community and, in light of his medical condition in the COVID-19 environment, that there is an exceptional reason justifying his release. The rationale for each finding is discussed in turn below.

First, the Court finds by clear and convincing evidence that Defendant does not pose a flight risk. Defendant is a lifelong resident of Philadelphia. His community ties are in this federal district. He was raised, educated, and employed here. His children and their mother, with whom Defendant has a good relationship, reside in the area. Further, Defendant has pled guilty to the two offenses, is remorseful and has demonstrated acceptance of responsibility for his offenses, and has never failed to appear for trial. He has proffered home detention with GPS tracking as a condition of bail to ensure that he does not flee. In light of the length of Defendant's residency in this district, community ties, his need to avoid contact with the public because of his asthmatic condition in the COVID-19 environment, and strict conditions of bail that will be imposed, he is not a flight risk.[6]

Second, the Court finds by clear and convincing evidence that Defendant does not pose a danger to the community. While the Court acknowledges that Defendant has pled guilty to crimes that raise a presumption of danger to the community, his specific circumstances have overcome that presumption. Defendant has no history of violence. His criminal record, including the crimes of conviction in this case, do not prove he is a violent person. Although Defendant pled guilty to possession of a firearm, it is important to note that the underlying conviction making such possession unlawful was for forgery, a nonviolent offense. Moreover, he has been incarcerated for over eighteen months. It would not be in his best interest to commit another offense while released

---

[6]   As noted, the Government contends that Defendant is a flight risk given the posture of the case. It avers that because Defendant is about to face sentencing, and therefore is at the punishment phase of his criminal proceedings, he is more likely to flee. While the Court recognizes the logic in the Government's argument, its persuasiveness is outweighed by the specific facts of this case and Defendant's individual circumstances.

8

on bail with home detention because he would risk being reincarcerated, not being with his family, impeding his ability to continue his education, and facing a greater sentence in this case.[7]  Further, given Defendant's heightened vulnerability to COVID-19 and the medical necessity of practicing social distancing, the reality is that the risk of the commission of future crime is diminished.  And since he will be living with his mother and see his family and possibly continue his education, Defendant will have the benefit of a stable environment and a meaningful pursuit to occupy his time while detained at home.  For all these reasons, the Court finds by clear and convincing evidence that Defendant would not pose a danger to the community if released prior to sentencing.

Third, there is an exceptional reason why Defendant's continued incarceration pending sentencing would not be appropriate.  The objective evidence in this case shows he suffers from chronic asthma.  It is not a condition that suddenly appeared when an asthma diagnosis would be beneficial.  In fact, before the current COVID-19 pandemic, Defendant reported to the Philadelphia FDC's health services unit that he has suffered from asthma since childhood.  The day after he was detained, Defendant was prescribed an albuterol inhaler by Philadelphia FDC's health services personnel and that prescription has been refilled regularly.  He continues to undergo "advanced practice" for chronic care.

Given Defendant's chronic asthma, continued detention pending sentencing presents an exceptional and untenable risk to his health and safety.   COVID-19 is an undisputed and

---

[7]   According to the PSR, during his detention at the Philadelphia FDC, Defendant received one infraction for use of drugs and alcohol.  (PSR at 4.)  The circumstances that led to the infraction are not described in the PSR.  He was sanctioned with a 40-day disallowance of good conduct time and 25 days in disciplinary segregation.  (Id. at 4.)  The Court stresses that such conduct that led to the infraction is forbidden during release pending sentencing and failure to abide by this condition preventing such abuse will result in the revocation of Defendant's bail. Furthermore, as a condition of release, the Court will require Defendant to undergo drug and alcohol testing.

unprecedented public health crisis.  As a virus that impacts the respiratory system, the consensus medical opinion is that individuals with moderate to severe asthma are more vulnerable to severe forms of COVID-19.  It is also clear that prisons present a veritable breeding ground for the spread of COVID-19 because incarcerated persons may not be able to take certain proactive measures, such as maintaining six feet of separation from other inmates that public health experts recommend to limit the risk of infection, nor can they be sure the prison is completely disinfected.  In light of these risks and Defendant's particular vulnerability to COVID-19, there is an exceptional reason warranting release pending sentencing.

To be clear, this is not a blanket statement that the Philadelphia FDC is generally unsafe. Indeed, to the contrary, the Court applauds the BOP for its efforts to prevent the spread of COVID-19 within its facilities.  The Court's decision stems from the fact that Defendant has made a particularized showing based on detailed medical documentation that his circumstances present an exceptional vulnerability to COVID-19 that can be mitigated by release pending sentencing, and that such release does not present a risk of flight or danger to the community.  For these reasons, the Court will order Defendant released to home confinement with conditions.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Release Pending Imposition of Sentence (Doc. No. 110) will be granted.  An appropriate Order with all the conditions of bail will be issued along with this Opinion.